UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**LESTER JOHNSON**                                                                                                    **CIVIL ACTION**

**VERSUS**

**COOPER T. SMITH STEVEDORING COMPANY, INC.**                        **NO. 20-00749-BAJ-RLB**

### RULING AND ORDER

Plaintiff Lester Johnson, a self-described "longshoreman," was working aboard a cargo barge moored in the Mississippi River near Darrow, Louisiana, when he slipped, fell overboard, and landed 13 feet below on the deck of the AMERICA, a weight station vessel owned by his employer, Defendant Cooper T. Smith Stevedoring Company, Inc. ("CTS"). Plaintiff was seriously injured as a result of his fall, and collected workers compensation benefits from CTS for nearly 18 months, under the compensation scheme set forth in the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et seq.* (the "LHWCA").

This action seeks more. Plaintiff's Complaint alleges that he was not merely a longshoreman on the date he was injured, but was instead a "seaman" within the meaning of the Jones Act, 46 U.S.C. § 30104, and, as such, entitled to recover additional damages from CTS under various maritime negligence theories. Alternatively, Plaintiff pursues claims of vessel negligence against CTS as owner of the AMERICA, asserting that his injuries resulted from CTS's failure to maintain its vessel in a reasonably safe condition, and to warn him of latent dangers.

Now before the Court is CTS's **Motion For Summary Judgment (Doc. 13)**, which argues that Plaintiff's action must be dismissed because the summary judgment evidence shows: (1) Plaintiff is not a seaman, and therefore not entitled to relief under the Jones Act; (2) Plaintiff's accident was not the result of a defective vessel and CTS breached no duties owed to Plaintiff; and (3) Plaintiff's recovery of compensation benefits under the LHWCA bars him from pursuing an additional general maritime negligence claim against CTS. (Doc. 13-1). Plaintiff opposes CTS's Motion, in part. (Doc. 14). For the reasons stated herein, CTS's Motion will be granted, and Plaintiff's action will be dismissed with prejudice.

## I. BACKGROUND

### A. Summary Judgment Evidence

The following facts are undisputed, as set forth in CTS's Statement Of Undisputed Material Facts In Support Of Motion For Summary Judgment (Doc. 13-6, "CTS SOF"), Plaintiff's Response To Cooper's Statement Of Undisputed Material Facts In Support Of Motion For Summary Judgment (Doc. 14-2, "Response SOF"), the parties' joint Pre-Trial Order (Doc. 17, "Joint PTO"), and the record evidence submitted in support of these pleadings.

CTS provides midstream cargo loading and unloading services to vessels traveling the Mississippi River. (*See* Joint PTO ¶ 1). CTS's base of operations is located near Darrow, Louisiana. (*Id.*). And because CTS provides midstream services—transferring bulk cargo from cargo barges to oceangoing vessels in the middle of the River (as opposed to dockside or on the shore)—CTS also owns and

maintains multiple boats to aid in this purpose, including weight station vessels (such as the AMERICA), and crewboats to ferry its employees back and forth from the shore. (*See id.* ¶¶ 1, 2, 6, 8, 14).

In order to provide its stevedoring services, CTS sources longshoremen from the local union. (*Id.* ¶ 9). Notably, under the terms of its agreement with the union, CTS employs its longshoremen on a per-day basis, terminating employment at the end of each day. (CTS SOF ¶ 13; Response SOF ¶ 13[1]). Further, CTS does not assign its longshoremen as crew members aboard any CTS vessel. (CTS SOF ¶ 14; Response SOF ¶ 14[2]). Rather, CTS hires its longshoremen specifically to assist in loading and unloading cargo from cargo barges, and the fact that a longshoreman performs a day's work aboard a particular vessel is merely incidental to the nature of providing stevedoring services midstream, away from the shore. (CTS SOF ¶¶ 15-17; Response

---

[1] Plaintiff "contests" this fact, yet fails to cite any evidence specifically controverting the day-to-day nature of his employment terms. (*See* Response SOF ¶ 13). Instead, Plaintiff responds generically that "he worked at the same facility for over 20 years." (*See id.*). The Local Rules governing summary judgment practice require Plaintiff to cite specific evidence controverting CTS's proposed facts, or risk those facts being deemed admitted for present purposes. *See* M.D. La. LR 56(d), 56(f). Here, Plaintiff's generic rebuttal is obviously not sufficient to carry his summary judgment burden. Accordingly, under Local Rules 56(d) and 56(f), the Court deems the fact of Plaintiff's day-to-day employment *admitted* as set forth in CTS's Statement Of Undisputed Material Facts In Support Of Motion For Summary Judgment, due to Plaintiff's failure to properly controvert it. *See N. Frac Proppants, LLC v. Regions Bank, NA*, No. 19-cv-00811, 2022 WL 1297180, at *1 n.1 (M.D. La. Apr. 29, 2022) (defendant's proposed facts deemed admitted as written due to plaintiffs' failure to properly support their "qualified" admissions).

[2] Here, again, Plaintiff "contests" this fact, yet fails to cite any evidence specifically controverting it. (*See* Response SOF ¶ 14). Accordingly, this fact is also deemed *admitted* as set forth by CTS. *See* n.1, *supra*.

SOF ¶¶ 15-17[3]).

Plaintiff is a self-described "longshoreman," (Doc. 13-2 at p. 14), a member of the local union and, consistent with the terms set forth above, has worked for CTS since 2008. (*See* Joint PTO ¶¶ 9-10). Plaintiff's job responsibilities have varied over the course of his employment with CTS; mostly, however, he has operated heavy machinery moving cargo in and among cargo barges moored near CTS's Darrow facility. (Joint PTO ¶ 11). Significantly, Plaintiff's employment with CTS does *not* require him to sail aboard any CTS vessel, whether to sea or even between ports on the Mississippi River; rather Plaintiff's work aboard any particular cargo barge or cargo vessel is limited to performing discrete stevedoring services, after which Plaintiff's connection to the vessel ends. (CTS SOF ¶¶ 20-21; Response SOF ¶¶ 20-21[4]).

On June 22, 2018, Plaintiff reported to CTS's Darrow Facility for his standard overnight shift. (Joint PTO ¶ 13). On that day, Plaintiff's work assignment required him to operate a front end loader inside the hold of a cargo barge moored midstream, removing yellow corn from the barge to the AMERICA; in turn, the AMERICA would transfer the corn to a separate oceangoing vessel. (Joint PTO ¶ 15).[5] Because the

---

[3] As above, Plaintiff "contests" these facts, yet fails to cite any evidence specifically controverting them. (*See* Response SOF ¶¶ 15-17). Accordingly, they are also deemed *admitted*. *See* n.1, *supra*.

[4] As above, Plaintiff "contests" these facts, yet fails to cite any evidence specifically controverting them. (*See* Response SOF ¶¶ 20-21). Accordingly, they are also deemed *admitted*. *See* n.1, *supra*.

[5] As stated above, CTS owned, maintained, and operated the AMERICA. (CTS SOF ¶ 7; Response SOF ¶ 7). CTS did *not* own the cargo barge or the oceangoing vessel involved in the events of June 22, 2018. (CTS SOF ¶¶ 8, 11; Response SOF ¶¶ 8, 11).

cargo barge and the AMERICA were each positioned in the middle of the River, Plaintiff rode a CTS crewboat from CTS's landing dock to the AMERICA to report for his assignment. (Joint PTO ¶ 14).

After completing his work—that is, after removing all the yellow corn from the cargo barge—Plaintiff moved the front end loader into position to be lifted out of the cargo barge's hold. (Joint PTO ¶ 16). Then, Plaintiff himself climbed out of the cargo barge's hold using an aluminum ladder. (*Id.* ¶ 17). When he reached the top of the ladder, Plaintiff sat atop the barge's coaming wall, and, assisted by another longshoreman, pulled the ladder out of the barge's hold. (*Id.* ¶¶ 18-20). Then, Plaintiff stood on the deck of the barge and, still assisted by the other longshoreman, lifted the ladder above his head to return it to the "slot"—*i.e.*, the ladder's storage position on the AMERICA. (CTS SOF ¶¶ 42-44[6]).

At this point, Plaintiff slipped and fell off the barge, (*id.* ¶¶ 45-46), ultimately landing on the AMERICA's catwalk, some thirteen feet below the barge's deck. (Joint PTO ¶ 23). At his deposition, when asked to describe the cause of his accident, Plaintiff testified that he slipped due to cargo (yellow corn) residue "on the side of the barge." (Doc. 13-3 at p. 22). Plaintiff further admitted that he was aware of the cargo residue on the barge's deck when he slipped, and that such residue is a normal part of the unloading process:

Q. What I'm trying to figure out is what caused you to fall, do you know?

---

[6] Plaintiff fails to offer any response whatsoever the "facts" set forth at paragraphs 42 through 53 of CTS's Statement Of Undisputed Material Facts. (*See* Response SOF at p. 10). Accordingly, these facts are also deemed *admitted* as set forth by CTS. *See* n.1, *supra*.

5

> A. Basically, I think I slipped, but they had cargo on the side of the barge though. On the side of the barge, on the rig, and on the deck itself.
>
> Q. So, do you believe that you slipped on the cargo?
>
> A. Yes, sir.
>
> Q. Okay. Had you seen the cargo on the deck of the barge before you stood up?
>
> A. Well, basically when I come out of the barge everything was full of cargo already. When the America on that big bucket it still was cargo.
>
> Q. And when you say cargo, it was whatever grain was being put into the Ocean 1.
>
> A. Yes.
>
> Q. And so that -- whenever you're loading these ships as a function of loading the ship the cargo dust gets on it? It gets all over the place. Right. It gets all over the place.

(Doc. 13-3 at pp. 22-23).

Further, Plaintiff *denied* that his accident was the result of any difficulty inherent to returning the ladder to its storage position on the AMERICA; instead, he simply lost his footing:

> Q. When you were trying -- when you and Mr. Thomas were trying to put the ladder into the slot were you having difficulty doing that?
>
> A. No, sir. You know, I don't have no problems out there you know. It's just something happened that night. It happened so fast in the blink of eye [sic].
>
> Q. You lost your footing on the cargo essentially is what happened; correct?
>
> A. Yes, sir.

(Doc. 13-3 at pp. 24-25).

In any event, Plaintiff sustained substantial injuries as a result of his fall, requiring immediate medical attention, multiple surgeries, and other rehabilitative

6

procedures and therapies, and rendering him temporarily disabled. (Joint PTO ¶¶ 25-55). Fortunately, Plaintiff ultimately recovered, and was eventually cleared to return to work. (*See id.* at ¶¶ 49-52). From the date of his injury to January 2020, Plaintiff collected benefits from CTS under the workers' compensation scheme set forth in the LHWCA. (CTS SOF ¶ 5; Response SOF ¶ 5).

### B. Procedural History

On November 6, 2020, Plaintiff initiated this action, naming CTS as the sole defendant and alleging claims of (1) negligence, unseaworthiness, and maintenance and cure under the Jones Act, 46 U.S.C. § 30104, or, alternatively, (2) vessel negligence under the LHWCA, 33 U.S.C. § 905(b); and (3) general maritime law negligence. (*See* Doc. 1; *see also* Doc. 2; CTS SOF ¶ 6; Response SOF ¶ 6).

Now CTS moves for summary judgment, arguing that Plaintiff's Jones Act claims fail because he is not a "seaman" within the meaning of the Jones Act; that Plaintiff's vessel negligence claims fail because CTS did not breach any duty owed to Plaintiff; and that Plaintiff's general maritime negligence claim is precluded under 33 U.S.C. § 905(a) because Plaintiff recovered workers compensation under the LHWCA. (Doc. 13-1 at pp. 8-9). Plaintiff does not contest—and therefore concedes—that his general maritime negligence claim is precluded,[7] but otherwise opposes

---

[7] Generally speaking, a party waives an issue by failing to adequately brief it. *See United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001). Moreover, the Local Civil Rules require that parties support their arguments with "a concise statement of reasons ... and citations of authorities," M.D. La. LR 7(d), and this Court has repeatedly admonished that it will not speculate on arguments that have not been advanced, or attempt to develop arguments on a party's behalf. *See N. Frac Proppants, LLC v. Regions Bank, NA*, No. 19-cv-00811, 2022 WL 1297180, at *8 n.9 (M.D. La. Apr. 29, 2022) (Jackson, J.) (citing authorities). Pursuant to the Court's Local Rules, and consistent with the general rule that a party's failure to adequately

CTS's motion. (Doc. 14).

## II. ANALYSIS

### A. Standard

Federal Rule of Civil Procedure ("Rule") 56(a) provides that the Court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant bears its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587. Stated differently, "[i]f the party with the burden of proof cannot produce any summary judgment evidence on an essential element of [her] claim, summary judgment is required." *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990).

### B. Discussion

#### i. Plaintiff's Jones Act claims fail because he has not presented evidence establishing a dispute that he is a "seaman" within the meaning of the Jones Act

The Jones Act grants "a seaman" a cause of action against his employer in

---

brief an issue acts as a waiver, the Court determines that Plaintiff has waived his opposition to dismissal of his general maritime negligence claim, and dismisses this claim pursuant to 33 U.S.C. § 905(a) for the reasons stated in CTS's memorandum supporting its motion for summary judgment. (*See* Doc. 13-1 at pp. 19-20).

8

negligence. 46 U.S.C. § 30104. Critically, "[o]nly seamen may sue under the Jones Act." *Sanchez v. Smart Fabricators of Texas, L.L.C.*, 997 F.3d 564, 568–69 (5th Cir. 2021). By contrast, the LHWCA governs the rights of *non*-seamen maritime workers. *Id.* at 569. Only *non*-seamen maritime workers may pursue claims under the LHWCA. *Id.* In short, "the seaman's remedy is limited to rights granted by the Jones Act, and rights granted to other maritime workers are provided exclusively by the LHWCA. The two remedies are mutually exclusive." *Id.*

Congress has not defined what it means to be a "seaman," leaving it to the Courts to delineate the contours of this all-important term. *Id.* at 569. The courts, in turn, have developed a two-prong test, which looks first to whether the employee's duties "contribute to the function of the vessel or to the accomplishment of its mission," and, second, to whether the employee maintains "a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *See Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995) (quotation marks and alterations omitted).

### a. Plaintiff's work plainly contributed to the function of the vessel

The threshold requirement that an employee must "contribute to the function of the vessel or to the accomplishment of its mission" is not demanding: "All who work at sea in the service of a ship are *eligible* for seaman status." *Chandris*, 515 U.S. at 368 (emphasis in original; quotation marks omitted). Here, Plaintiff's work on the date of his injury obviously contributed to the mission of multiple vessels. Quite simply, had no one performed Plaintiff's assignment the barge would not have been

9

unloaded, the oceangoing vessel would not have been loaded, and each vessel's mission to deliver corn to market would have been delayed. *Cf. Sanchez*, 997 F.3d at 574 (welder contributed to the function of two vessels by performing discrete repairs necessary to keep the vessels in condition to drill for oil and gas).

### b. Plaintiff has not produced evidence to create a contest that his connection with a vessel was substantial in terms of its duration and nature

Next, the Court assesses whether Plaintiff has sufficiently proved a "connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Chandris*, 515 U.S. at 368. Here, Plaintiff falters.

The "duration" element of this prong lends itself to some degree of mathematical precision: "[G]enerally if a worker spends at least 30 percent of his time aboard a vessel or a fleet of vessels, then he establishes the duration prong." *Sanchez*, 997 F.3d at 574. Here, however, Plaintiff has produced no evidence to show what portion of his time was spent aboard a vessel. Rather, Plaintiff's *evidence*—consisting of just *one* exhibit—shows *only* that that Plaintiff worked for CTS for 20 years, that he operated heavy machinery and performed various other stevedoring functions, and that on the date of his accident he worked aboard a cargo barge moored midstream. (*See generally* Doc. 14-1). Missing is any indication whatsoever that Plaintiff's job regularly required him to work on the water (as opposed to dockside). At summary judgment, it is Plaintiff's burden to produce *evidence* creating a contest as to all essential elements of his claim; failure to do so requires dismissal. *Geiserman*, 893 F.2d at 793. Having failed to provide any evidence establishing what portion of his

10

20-year tenure he spent aboard a vessel or a fleet of vessels, Plaintiff cannot show a substantial connection to a vessel in navigation and his Jones Act claims must fail.

Plaintiff fares no better under the "nature" element. Unlike the "duration" element, the nature element does not lend itself to mathematical precision. Instead, the Court assesses whether the worker is regularly exposed to the "perils of the sea." *See Sanchez*, 997 F.3d at 573. Making this determination requires the Court to weigh the following factors:

1. Does the worker owe his allegiance to the vessel, rather than simply to a shoreside employer?

2. Is the work sea-based or involve seagoing activity?

3. (a) Is the worker's assignment to a vessel limited to performance of a discrete task after which the worker's connection to the vessel ends, or (b) Does the worker's assignment include sailing with the vessel from port to port or location to location?

*See Sanchez*, 997 F.3d at 574.

On the date of his accident, Plaintiff was working aboard a barge stationed in the middle of the Mississippi River. In a general sense, Plaintiff's work certainly exposed him to maritime perils. Yet, this is not where the inquiry ends. *Id.* at 574 ("[S]eamen and non-seamen maritime workers may face similar risks and perils, and that this is not an adequate test for distinguishing between the two."). Measured against the factors set forth in *Sanchez*, CTS's *unrebutted* evidence shows: (1) Plaintiff owed his allegiance to his shoreside employer (CTS), *not* any particular vessel, (CTS SOF ¶¶ 15-17; Response SOF ¶¶ 15-17); (2) Plaintiff's employment with CTS did *not* require sailing or sea-going activity, (CTS SOF ¶ 20; Response SOF ¶ 20; *and* (3) Plaintiff's work aboard any particular vessel was limited to performing

11

discrete stevedoring services, after which Plaintiff's connection to the vessel would end. (CTS SOF ¶ 21; Response SOF ¶ 21). In short, again, Plaintiff has produced *no evidence* to create a contest regarding the "nature" element, and his Jones Act claims must fail. *Cf. Sanchez*, 997 F.3d at 574 (welder failed to establish "nature" element where he primarily worked dockside and owed no allegiance to any particular vessel after completing discrete repair tasks).

### ii. Plaintiff's LHWCA vessel negligence claims fail because he has not presented evidence to create a contest that CTS breached any duty owed to Plaintiff

Having determined that Plaintiff's Jones Act claims fail because he was not a "seaman," the question remains whether he may pursue his vessel negligence claim against CTS as owner of the AMERICA. The LHWCA provides an injured longshoreman a cause of action in negligence against the owner of the vessel, provided that the injury was *not* "caused by the negligence of persons engaged in providing stevedoring services to the vessel." 33 U.S.C. § 905(b).

The parties agree that CTS owed three limited duties to a Plaintiff on the date he was injured: (1) the duty to turn over a reasonably safe vessel and warn of Plaintiff of known hidden defects (the "Turnover Duty"); (2) the duty to avoid exposing Plaintiff to hazards of the vessel that remained under CTS's active control (the "Active Control Duty"); and (3) the duty to intervene upon acquiring actual knowledge of a condition posing an unreasonable risk of harm (the "Duty to Intervene"). (*Compare* Doc. 13-1 at p. 17, *with* Doc. 14 at p. 6). Plaintiff does not address—and therefore abandons[8]—

---

[8] *See supra* n.7; *N. Frac Proppants*, 2022 WL 1297180, at *8 n.9.

any claim that CTS breached its Duty to Intervene. (*See* Doc. 14 at pp. 6-7). Instead, Plaintiff argues only that a factual dispute exists regarding whether CTS breached the Turnover Duty and/or the Active Control Duty. (*See id.*).

### a. The Turnover Duty

The turnover duty "relates to the condition of the ship upon the commencement of stevedoring operations." *Howlett v. Birkdale Shipping, Co., S.A.*, 512 U.S. 92, 98 (1994). This duty can be separated into (1) "a duty to exercise ordinary care under the circumstances to turn over the ship and its equipment in such condition that an expert stevedore can carry on stevedoring operations with reasonable safety," and (2) "a duty to warn the stevedore of latent or hidden dangers which are known to the vessel owner or should have been known to it." *Kirksey v. Tonghai Maritime*, 535 F.3d 388, 392 (5th Cir. 2008). "[T]he duty to warn is a narrow one; it does not include dangers that are 'open and obvious' dangers or those that 'a reasonably competent stevedore should anticipate encountering.'" *Sobrino-Barrera v. Anderson Shipping Co.*, 495 F. App'x 430, 433–34 (5th Cir. 2012) (quoting *Kirksey*, 535 F.3d at 392).

Here, Plaintiff baldly asserts that "[t]here are genuine issues of material facts regarding the defendant's violation of the turnover duty," but cites *no evidence* to support his position. (*See* Doc. 14 at pp. 6-7). Indeed, Plaintiff's argument supporting his Turnover Duty claim—such as it is—fails to even *identify* a defect existing aboard the AMERICA at the commencement of operations on the date of his accident. (*Id.*). Lacking even the merest hint of the alleged defect at issue, much less proof of the same, the Court must also dismiss Plaintiff's turnover duty claim.

13

### b. The Active Control Duty

"A vessel also has a duty to 'exercise reasonable care to prevent injuries to longshoremen in areas that remain under the 'active control of the vessel.'" *Sobrino-Barrera*, 495 F. App'x at 434 (quoting *Howlett*, 512 U.S. at 98). Here, at least, Plaintiff identifies the basis of his claim, arguing that CTS breached its active control duty by failing to provide its longshoremen "the means to safely remove ladders from holds without men having to lift them out of the hold, over their heads, and into the 'slot' on the AMERICA." (Doc. 14 at p. 7). Yet, again, however, Plaintiff's argument falters because the unrebutted evidence—Plaintiff's own testimony—establishes that he had no difficulty returning the ladder to its hold; rather Plaintiff slipped and fell due to excess cargo aboard the deck of the cargo barge, an open and obvious hazard common to all stevedoring operations. (Doc. 13-3 at pp. 24-25). CTS did not own the cargo barge, and Plaintiff does not even attempt to argue that CTS's control of the AMERICA somehow extended to making sure that the cargo barge's deck was free of cargo residue. Accordingly, Plaintiff's active duty claim also fails and must be dismissed.

### III.   CONCLUSION

This Court has repeatedly admonished that summary judgment is about *evidence*, and that a party that fails to direct the Court's attention to any evidence supporting his claims *cannot* carry his burden of showing a genuine, material dispute (or lack thereof). *See, e.g., Weary v. Lumber Liquidators, Inc.*, No. 19-cv-00698, 2022 WL 1598341, at *6 (M.D. La. May 19, 2022) (Jackson, J.); *Loolara v. Nat'l Flood Ins. Program*, 551 F. Supp. 3d 626, 630 (M.D. La. 2021) (Jackson, J.). Here, at significant

risk, Plaintiff failed to present the Court the evidence required to create a genuine dispute necessitating trial.

Accordingly,

**IT IS ORDERED** that CTS's **Motion For Summary Judgment (Doc. 13)** be and is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' action be and is hereby **DISMISSED WITH PREJUDICE**.

Judgment shall issue separately.

Baton Rouge, Louisiana, this 11th day of July, 2022

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**